**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KAREN A. HOULIHAN,** | : | **Civil No. 3:10-CV-641** |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Judge Nealon)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **MICHAEL J. ASTRUE,** | : | |
| **COMMISSIONER OF** | : | |
| **SOCIAL SECURITY** | : | |
| | : | |
| **Defendant.** | : | |

## REPORT AND RECOMMENDATION

### I. Statement of Facts and of the Case

#### A. Introduction

The Plaintiff, Karen Houlihan, appeals from a partially favorable social security disability decision which granted her claim for supplemental security income benefits, but only approved the payment of these benefits for a fixed 16-month period of time. This favorable finding of partial disability was made by the ALJ on a factual record which was marked by contradictory evidence and conflicting claims by Houlihan, claims which were set against the background of a sparse and sporadic employment history. In making this finding of partial disability, the ALJ ruled in a fashion consistent with social security regulations, finding Houlihan disabled for the period

of time in which she suffered acute symptoms from Hepatitis C, but declining to further extend benefits to Houlihan once the medical evidence from her treating physician showed that treatment of this Hepatitis C had led to marked improvement in Houlihan's health, and remission of this disease.

We find that this partially favorable ruling is supported by substantial evidence. Therefore, for the reasons set forth below, we recommend that the ALJ's decision be affirmed.

## B. Houlihan's Social Security Application and Employment History

In this case the claimant, Karen Houlihan, appeals from a partially favorable ruling by an ALJ which awarded her benefits for a fixed time period from April, 2006, through August, 2007. Houlihan lodges this appeal based upon a factual record which is marked by contradictory evidence, some of which is a product of Houlihan's own inconsistent statements. To understand Houlihan's case, and the highly favorable nature of the ruling which she now challenges, it is important to place that ruling in the proper factual context.

On August 10, 2006, Houlihan applied for social security disability benefits, claiming that she suffered from a series of disabilities which had commenced on or about April 1, 2006. (Tr.81-83.) At the time that she filed for benefits, Houlihan was

43 years of age, and was considered a "younger person" for purposes of assessing her disability claim. (Tr. 102.) Houlihan advanced this claim of disability against the backdrop of an employment history that was both sparse and sporadic. That employment history revealed that Houlihan had not worked for five years prior to the alleged onslaught of her disability, (Tr. 89) and indicated that she had ceased employment because "I got fired." (Tr. 93) Moreover, in the thirty-year period preceding Houlihan's 2008 disability hearing, from 1978 through 2008, it appeared that Houlihan had held no job for twenty-two of those thirty years. (Tr. 89.) When Houlihan did work, she apparently worked sporadically, reporting only approximately $15,000 in wages during her entire work-life. (Tr. 89.)

## C. Houlihan's Contradictory Medical and Social History

In her disability application, Houlihan alleged that she was disabled due to a combination of ailments and complaints. However, the evidence presented by Houlihan regarding these medical complaints was often confused and contradictory.

These contradictions in the evidence related to a series of matters, large and small. For example, in her application Houlihan claimed, in part, that she was disabled because she suffered from symptoms of fibromyalgia. (Tr. 19.) However, the medical record revealed that Houlihan had never been diagnosed as suffering from fibromyalgia. (Id.)

Similarly, Houlihan claimed that various musculoskeletal pains combined to leave her disabled. (Tr. 299, 303.) Yet, the factual record as to these complaints was also often contradictory, confused and equivocal. For example, while asserting that these pains left her disabled, Houlihan acknowledged that she was still able to carry on many activities of daily living. Thus, Houlihan was able to care for others, including her children and pets (Tr. 102.) She also tended to her own needs such as bathing, dressing, and styling her hair.(Tr. 102-03.) Houlihan was also capable of cooking and performing household work like washing dishes, carrying light grocery bags, laundering clothes, and cleaning her house. (Tr. 102-04). Furthermore, Houlihan acknowledged that her impairments did not prevent her from using her hands to operate a television remote control, dial a telephone, use a knife and fork, fasten buttons, or tie shoes. (Tr. 105.)

Moreover, and more importantly, various medical examinations did not reveal objective medical support for Houlihan's claims of severe musculoskeletal impairment or injury. Indeed, in some instances, Houlihan provided care-givers conflicting accounts of her pain and discomfort. For example, in the course of treatment Houlihan advised one physician, Dr. Sallavanti, that she had no fatigue, malaise, joint pain, joint swelling, muscle cramps, muscle weakness, arthritis, or heat intolerance. (Tr. 303.) Dr. Sallavanti confirmed these reports on October 10, 2007, when he

examined Houlihan and found her back to be normal except for some decreased left grip strength, tingling in her legs, and a lumbar spasm. (Tr. 304). Thus, Dr. Sallavanti generally found Houlihan to be alert, to have a supple neck and to be in no acute distress. (Tr. 300 and 304.)

In addition, when Houlihan was treated by V.D. Dhaduk, M.D., she initially explained that she suffered from migraine headaches which started when she was 17 years old (Tr. 294). Yet, while she complained that these headaches worsened in the last six months, she admitted that her medication seemed "to take the edge off her headache" (Tr. 294). Moreover, upon objective examination, Dr. Dhaduk found that Houlihan was awake, alert, and fully oriented. (Tr. 295.) While Dr. Dhaduk found tenderness and decreased movement and sensation in Plaintiff's cervical spine, he observed no muscle wasting or twitches, (Tr. 295), and reported no muscular weakness or partial paralysis affecting any one side of her body. (Tr. 295). An EMG of Houlihan conducted by Dr. Dhalik revealed only a mild ulnar compression at the left elbow and mild acute and chronic radiculopathy with spasm, however, "[a]ll other muscles stud[ied] were within normal limits. Motor units were normal." (Tr. 292.)

Like her physical condition, the medical record with respect to Houlihan's emotional well-being was confused and clouded, and was marked by conflicting and contradictory statements from Houlihan herself. At the outset, when asked to describe

her social functioning as part of the disability application process, Houlihan stated that her memory and cognition were intact and that she needed no reminders to care for her personal needs. According to Houlihan, she made her own decisions, and was able to schedule her day. (Tr. 105-07.) Houlihan also explained that she also got along "very well" with people in authority and had no difficulty going out in public. (Tr. 106.) Medical treatment records for Houlihan provided a mixed and contradictory portrait of her emotional health. Thus, on November 17, 2006, the physician treating Houlihan's Hepatitis C gave a positive assessment of her emotional state, reporting that, "[s]ome of her mood issues that she discussed with [Dr. Lalos] last time ha[d] been addressed and she . . . generally [wa]s feeling better" (Tr. 327). Three months after the completion of her Hepatitis C treatment, in October, 2007, Houlihan continued to report a positive mental outlook, denying memory loss, mental disturbance, paranoia, hallucinations, suicidal ideation or any feelings of anxiety or depression to her primary care doctor, Armando Sallavanti, D.O. (Tr. 303.) Dr. Sallavanti examined Plaintiff and found her to be alert and in no acute distress, and assessed her alleged anxiety as "improved" (Tr. 304-05.) By mid-October, 2007 however, Houlihan was presenting in a different way, telling her therapist that even though she "couldn't stay long," she felt anxious, depressed, slept poorly, and bit her fingernails (Tr. 332.) She repeated these complaints to Dr. Sallavanti, (Tr. 299) who

consequently assessed her anxiety as "deteriorated." (Tr. 300.) On November 12, 2007, Plaintiff underwent an MRI of her brain, which showed no evidence of a tumor. (Tr. 290, 297.) Three days later, Plaintiff repeated her complaint of being anxious to her therapist, but stated that now her sleep and appetite were fair. (Tr. 332.) She also asserted that the "[o]nly time she felt good was when she drank." (Tr. 332.)

Finally, these apparent contradictions extended into other aspects of Houlihan's medical and social history. Thus, many of Houlihan's chronic medical complaints appeared related to excessive use of alcohol. While the ALJ gave Houlihan the benefit of the doubt and credited her claim that she had abstained from alcohol use since the onset of her disability in April, 2006, (Tr. 17) other statements by Houlihan cast doubt upon the accuracy of this claim. For example, during a November, 2007, medical examination Houlihan volunteered that the "[o]nly time she felt good was when she drank." (Tr. 332.) Houlihan's social history was also cloaked in contradictions. In her SSI application that Houlihan stated that she had never married (Tr. 81), yet in the course of her Hepatitis C treatment physicians reported that they discussed their treatment both with Houlihan "and her husband."(Tr. 154). In fact, although she claimed in her SSI application that she had never married, when she sought treatment for her disabling illness, Hepatitis C, Houlihan chose "her husband as the person to actually do the injection." (Tr. 154).

**D.** **Houlihan's Temporarily Disabling Medical Condition, Hepatitis C**

While much of Houlihan's medical history was cloaked in confusion and shrouded by contradictions, one clear medical finding emerged from these proceedings. During a 16-month period Houlihan suffered from a serious medical condition, Hepatitis C, which left her disabled for a period of time, but which responded very well to treatment.

With respect to this condition, an ailment that the ALJ found to be temporarily disabling, the evidence showed that Houlihan was initially diagnosed with Hepatitis C in December 2005. (Tr. 161.) By March, 2006, Alexander Lalos, M.D., a board certified gastroenterolgist, had examined Houlihan, reviewed her medical record, and reached the guarded optimistic prognosis that "she may have a good outcome even without antiviral treatment" (Tr. 162). This diagnosis, and the progression of this disease was further confirmed in May, 2006, when Houlihan underwent a liver biopsy. That biopsy further reaffirmed that Houlihan suffered from active Hepatitis C, and showed moderately active chronic hepatitis, bridging fibrosis with early nodule formation, but no signs of other malignancies. (Tr. 144, 155.)

Presented with this diagnosis, in the Summer and Fall of 2006, Dr. Lalos began antiviral therapy for Houlihan. (Tr. 154.) By September, 2006, Dr. Lalos observed that Plaintiff was "doing fairly well" on this treatment regime. (Tr. 329.)

On November 17, 2006, Dr. Lalos again found Plaintiff to be "doing well on treatment with a paucity of side effects." (Tr. 327.) In addition, "[s]ome of her mood issues that she discussed with [Dr. Lalos] last time ha[d] been addressed and she . . . generally [wa]s feeling better." (Tr. 327.) Dr. Lalos estimated a 70-75% chance that Houlihan's Hepatitis C would be cured and called this a "very good outcome." (Tr. 327.)

By January 3, 2007, physicians were reporting that Houlihan had "achieved complete viral eradication" and Dr. Lalos noted that she was "surprisingly doing very well." (Tr. 326.) Based on these findings, Dr. Lalos believed Houlihan had a "75-80% chance of hepatitis C cure at this point." (Tr. 326.) Two months later, in March, 2007, Dr. Lalos again noted that Houlihan was "doing very well" and predicted that her treatment would finish successfully in July 2007. (Tr. 324.)On May 23, 2007, Dr. Lalos reported that Houlihan "had persistently normal liver enzymes and her TSH . . . test[] ha[s] been in line" (Tr. 320), and was "doing very well just reaching the end of her treatment." (Tr. 320.) Dr. Lalos repeated that Plaintiff had a 75-80% chance of being cured. (Tr. 320.) Two months later, on July 25, 2007, Plaintiff completed her anti-viral treatment, (Tr. 318) a treatment program that Dr. Lalos found had been marked by "an early viral response and had documented normal . . . viral loads for the remainder of her treatment." (Tr. 318.) While Houlihan initially reported a false

positive test result for a possible viral relapse, by January 23, 2008, Dr. Lalos was reporting that Houlihan felt well, had enjoyed positive medical outcomes in her treatment, and probably had "a complete and sustained viral response." (Tr. 309, 313.)

### E.    Procedural History

On the basis of this mixed medical record, Houlihan applied for SSI in August, 2006, alleging a disability onset on April 1, 2006. (Tr. 63.) This claim was denied in administrative review, (Tr. 66) and Houlihan filed a request for a hearing before an ALJ. (Tr. 68.)  That ALJ hearing was held on March 13, 2008, (Tr. 37-65), at which time the Plaintiff was represented by counsel. (Id.) At this hearing, based upon her review of the medical file, the ALJ initially discussed with Houlihan and her counsel whether the parties would consent to the entry of an order finding partially in favor of the claimant. (Tr. 41-44.) When Houlihan voiced some reluctance to pursue this course, the ALJ underscored for her that she had the right to a hearing, stating"I don't want anyone to be forced." (Tr. 44). Houlihan's counsel raised no objections to this exchange, and in fact agreed with the ALJ, stating, "Okay. Okay." at the close of this colloquy. (Tr. 44.) The ALJ then took testimony from Houlihan and from a vocational expert. (Tr. 37-65.)

On April 14, 2008, the ALJ issued her 22-page ruling in this matter. (Tr. 6-27.) This ruling was, in fact, favorable to Houlihan, finding that she was disabled due to the severity of her Hepatitis C from April, 2006, through August, 2007. (Id.) As for Houlihan's broader claims of permanent and on-going disability, the ALJ found against the claimant. (Id.) In large measure, this ruling reflected the ALJ's determination that Houlihan's statements regarding the length, extent and severity of some of her symptoms were not fully credible, and were not supported by other medical evidence. (Id.)

The ALJ also fully considered two summary opinions provided by one of Houlihan's physicians, Dr.Sallavanti, in September, 2006, and April, 2007. These two statements opined that Houlihan was disabled in the Fall of 2006 and Spring of 2007 due to her Hepatitis C. In her opinion, the ALJ noted that she, too, found that Houlihan was disabled from April, 2006, through August, 2007. The ALJ observed, however, that subsequent reports from the physician actually treating Houlihan's Hepatitis C presented a more complete, and positive, picture of the extent of Houlihan's recovery, medical findings which led to ALJ to conclude that by the Autumn of 2007 Houlihan had regained the residual capacity to perform light work. (Id.)

Houlihan sought review of this adverse decision, (Tr. 4-5) and, on January 22, 2010, the Appeals Council denied Houlihan's request for review. (Tr. 1.) This appeal followed. (Doc. 1.) The parties have fully briefed this matter, (Docs. 15 and 16), and this case is now ripe for resolution. For the reasons set forth below, we find that substantial evidence supports the ALJ findings in this case; that those findings are adequately explained on the record; and that the findings reflect an appropriate assessment of all of the medical evidence, including the treating physician's reports. Therefore, it is recommended that this appeal be denied.

## II.    Discussion

### A.    Standards of Review–The Roles of the Administrative Law Judge and This Court

Resolution of the instant social security appeal involves an informed consideration of the respective roles of two adjudicators–the administrative law judge (ALJ) and this Court. At the outset, it is the responsibility of the ALJ in the first instance to determine whether a claimant has met the statutory prerequisites for entitlement to benefits. To receive disability benefits, a claimant must present evidence which demonstrates that the claimant has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can

be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

In making this determination the ALJ employs a five-step evaluation process to determine if a person is eligible for disability benefits. See 20 C.F.R. § 404.1520. See also Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999). If the ALJ finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. See 20 C.F.R. § 404.1520. As part of this analysis the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. See 20 C.F.R. §

404.1520. This disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that she is unable to engage in past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).

Similarly, an ALJ's determination regarding whether, and when, a person initially found to be disabled regains the capacity to work involves a seven-step analysis. See 20 C.F.R. §416.994. As part of this process, the ALJ must: First, determine if the claimant suffered from medical conditions giving rise to an impairment; second, determine whether the claimant's medical condition improved at any time; third, assess whether this medical improvement affects the claimant's ability to work; fourth, ascertain whether any exceptions to the medical improvement rules apply; fifth, assess whether the claimant's current medical impairments are severe, taking into account the improvement in the claimant's condition; sixth, if the claimant's condition remains severe, but improved, the ALJ must then assess the claimant's residual functional capacity to perform some work; and seventh, the ALJ must decide whether work exists that the claimant could perform given her residual functional capacity. Id.

Moreover, where a disability determination turns on an assessment of the level of a claimant's pain, the Social Security Regulations provide a framework under which a claimant's subjective complaints are to be considered. 20 C.F.R. § 404.1529. Such cases require the ALJ to "evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work." Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999). Cases involving an assessment of subjective reports of pain "obviously require[ ]" the ALJ "to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it." Id.

In making this assessment, the ALJ is guided both by statute and by regulations. This guidance eschews wholly subjective assessments of a claimant's pain. Instead. at the outset, by statute the ALJ is admonished that an "individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all the evidence. . . , would lead to a conclusion that the individual is under a disability." 42 U.S.C. § 423(d)(5)(A).

Applying this statutory guidance, the Social Security Regulations provide a framework under which a claimant's subjective complaints are to be considered. 20 C.F.R. § 404.1529. Under these regulations, first, symptoms, such as pain, shortness of breath, and fatigue, will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. § 404.1529(b). Once a medically determinable impairment which results in such symptoms is found to exist, the Commissioner must evaluate the intensity and persistence of such symptoms to determine their impact on the claimant's ability to work. 20 C.F.R. § 404.1529(b). In so doing, the medical evidence of record is considered along with the claimant's statements. 20 C.F.R. § 404.1529(b). Social Security Ruling 96-7p gives the following instructions in evaluating the credibility of the claimant's statements regarding her symptoms: "In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements. In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true. When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific

reasons for the weight given to the individual's statements." SSR 96-7p. SSR 96-4p provides that "Once the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the pain or other symptoms alleged has been established on the basis of medical signs and laboratory findings, allegations about the intensity and persistence of the symptoms must be considered with the objective medical abnormalities, and all other evidence in the case record, in evaluating the functionally limiting effects of the impairment(s)." SSR 96-4p.

The ALJ's disability determination must also meet certain basic procedural and substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Com. of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

Once the ALJ has made a disability determination, it is then the responsibility of this court to independently review that finding. In undertaking this task, this court applies a specific, well-settled and carefully articulated standard of review. In an action under 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security denying Plaintiff's claim for disability benefits, Congress has specifically provided that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g).

The "substantial evidence" standard of review prescribed by statute is a deferential standard of review. Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). When reviewing the denial of disability benefits, we must simply determine whether the denial is supported by substantial evidence. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); see also Johnson v. Commissioner of Social Sec., 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)." Johnson, 529 F.3d at 200. See also Pierce v. Underwood, 487 U.S. 552 (1988). It is less than a preponderance of the evidence but more than a mere scintilla of proof. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999)(quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).

A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). However, in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the decision] from being supported by substantial evidence." Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620 (1966). Moreover, in conducting this review we are cautioned that "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.' Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir.1997); see also Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir.1991) ('We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.')." Frazier v. Apfel, No. 99-715, 2000 WL 288246, *9 (E.D. Pa. March 7, 2000). Furthermore, in determining if the ALJ's decision is supported by substantial evidence the court may not parse the record

but rather must scrutinize the record as a whole. <u>Smith v. Califano</u>, 637 F.2d 968, 970 (3d Cir. 1981).

### B. The ALJ's Decision, Which Was Partially Favorable to Houlihan, Was Supported By Substantial Evidence

Judged against this deferential standard of review we find that the ALJ's disability decision in this case was supported by "substantial evidence" and, therefore, may not now be disturbed. At the outset, we note that this ruling was, in fact, favorable to Houlihan in some respects, finding that she was entitled to disability benefits from April, 2006, to August, 2007. Given the many conflicting and contradictory threads in the evidence presented to the ALJ, this partially favorable ruling reflects a thorough, careful, balanced analysis of all of the proof. It is, therefore, the paradigm of a decision which draws carefully upon substantial evidence.

Moreover, as we have noted, this decision involved an assessment of conflicting and equivocal medical evidence, and an assessment of competing, and inconsistent, statements made by Houlihan herself. This evidence showed that the Plaintiff's subjective complaints of pain were in conflict, and were not fully supported by independent diagnostic evidence and testing. Since "there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from

anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged," 42 U.S.C. § 423(d)(5)(A), the results of these diagnostic tests, which did not confirm the type of abnormalities which would sustain the Plaintiff's reports of pain, constituted "substantial evidence" supporting the ALJ's finding.

Similarly, the ALJ's assessment of the competing medical evidence relating to the Plaintiff's alleged psychological impairments rested upon sufficient "relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Johnson, 529 F.3d at 200, and, therefore, was supported by "substantial evidence." In this case, the ALJ correctly noted that the Plaintiff's mental state fluctuated over time, with Houlihan providing different accounts of her emotional state at different times to different care givers. Given these conflicts, the ALJ as fact-finder was entitled to give greater weight in this regard to Houlihan's own statements regarding her ability to function and carry out daily activities, statements which demonstrated an ability to carry out social and mental functioning.

As for the ALJ's findings regarding Houlihan's 16-month disability due to Hepatitis C, the initial finding that Houlihan was disabled from April, 2006, though August, 2007, is unchallenged and is amply supported by the statements of her treating physicians, as well as by objective test and treatment results. Moreover, while

Dr. Sallavanti, Houlihan's general physician opined in September, 2006, and April, 2007, that this condition was disabling, this opinion is wholly consistent with the ALJ's finding that Houlihan was disabled from April, 2006, through August, 2007. Furthermore, the ALJ's decision that Houlihan subsequently recovered and regained the residual capacity to do some light work, was fully supported by the medical records submitted by primary physician treating her Hepatitis C, Dr. Lalos, who noted that she was "surprisingly doing very well" (Tr. 326); estimated a 70-75% chance that Houlihan's Hepatitis C would be cured, calling this a "very good outcome" (Tr. 327); and concluded at the end of her treatment regime that Houlihan felt well, had enjoyed positive medical outcomes in her treatment, and probably had "a complete and sustained viral response." (Tr. 309, 313).

Indeed, in this respect, we note that the decision of the ALJ to deny disability benefits to Houlihan after the medical record revealed that her Hepatitis C had been successfully treated and was in remission, is entirely consistent with case law, which has routinely held that medically-controlled Hepatitis is not a permanently disabling aliment. See, e.g., Hernandez v. Commissioner, 230 F.App'x 130 (3d Cir. 2007); Stehman v. Commissioner, 216 F.App'x 249 (3d Cir. 2007); Walker v. Barnhart, 172 F.App'x 423 (3d Cir. 2006); Whitten v. Commissioner, 171 F.App'x 380 (3d Cir. 2006). Recognizing that the "substantial evidence" standard of review prescribed by

statute is a deferential standard of review, <u>Jones v. Barnhart</u>, 364 F.3d 501, 503 (3d Cir. 2004), which is met by less than a preponderance of the evidence but more than a mere scintilla of proof, <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971), we find that the ALJ's decisions assessing this competing proof regarding the Plaintiff's's ability to function despite her various claimed impairments was supported by substantial evidence and may not now be disturbed on appeal.

### C. <u>The ALJ's Decision Appropriately Addressed the Medical Evidence</u>

Beyond being adequately supported by the evidence, the ALJ's decision must must also be accompanied by "a clear and satisfactory explication of the basis on which it rests." <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. <u>Id</u>. at 706-707. Thus, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." <u>Schaudeck v. Com. of Soc. Sec</u>., 181 F. 3d 429, 433 (3d Cir. 1999). In this case we find that the ALJ's 22-page decision provided a full and complete statement of the evidence, individually assessed that evidence, and adequately explained which proof was found persuasive, and which evidence was discounted.

In particular, we conclude that the Plaintiff errs when she asserts that the ALJ did not properly consider the evidence provided by one of her treating physicians, Dr. Sallavanti, who indicated that Houlihan was disabled due to her Hepatitis in forms which he completed in September, 2006 and April, 2007. In this regard, the legal standards governing our evaluation of this type of evidence are familiar ones. In Morales v. Apfel, 225 F.3d 310 (3d Cir. 2000), the Court of Appeals for the Third Circuit set forth the standard for evaluating the opinion of a treating physician stating that:

> A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Plummer [v. Apfel, 186 F.3d 422, 429 (3d Cir.1999)] (quoting Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir.1987)); see also Adorno v. Shalala, 40 F.3d 43, 47 (3d Cir.1994); Jones, 954 F.2d at 128; Allen v. Bowen, 881 F.2d 37, 40-41 (3d Cir.1989); Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir.1988); Brewster, 786 F.2d at 585. Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." Plummer, 186 F.3d at 429 (citing Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir.1993)). The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled. See Adorno, 40 F.3d at 48. In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion. Plummer, 186 F.3d at 429; Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir.1988); Kent, 710 F.2d at 115.

<u>Id.</u> at 317-318.

Similarly, the Social Security Regulations state that when the opinion of a treating physician is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record," it is to be given controlling weight. 20 C.F.R. § 416.927(d)(2). When the opinion of a treating physician is not given controlling weight, the length of the treatment relationship and the frequency of examination must be considered. The Regulations state:

> Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a non-treating source.

20 C.F.R. § 416.927(d)(2)(I).

Additionally, the nature and extent of the treatment relationship is considered. The Regulations state:

> Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but we will give it less weight than that of

another physician who has treated you for the neck pain. When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source.

20 C.F.R. § 416.927(d)(2)(ii).

We find that the ALJ properly applied these benchmarks when assessing the medical evidence received from Dr. Sallavanti. That assessment aptly noted that there was no inconsistency between the doctor's opinions and the ALJ's findings. Dr. Sallavanti opined that Houlihan was disabled due to her Hepatitis C while Houlihan was in the throes of her treatment, in September, 2006 and April, 2007. The ALJ also found Houlihan disabled during this time frame. Moreover, the doctor's opinion was simply set forth in a summary fashion on disability assessment forms and the ALJ aptly noted that the purpose of these assessment forms is primarily to provide the claimant with other forms of financial assistance. Thus, according to the ALJ, under governing regulations, these materials relating to determinations by other agencies about disability were not binding on the Social Security Administration.

The ALJ did not err in reaching this conclusion. Indeed, it is well-settled that an ALJ may assign little weight to a physician's terse notation on such a form, particularly when other medical records tell a different and more complete story. See Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) (two-page New Jersey Division of Rehabilitation form on which treating physician merely "check[s] boxes" and

"fill[s] in blanks" was "weak evidence at best"); accord Plummer v. Apfel, 186 F.3d 422, 429-430 (3d Cir. 1999).

Finally, the ALJ was entitled to give greater weight to the medical reports of Dr. Lalos, who was primarily responsible for treating Houlihan's Hepatitis C. The reports of this physician, which detail Houlihan's successful treatment by August of 2007, occur later in time than Dr. Sallavanti's summary opinions, and address the scope, and nature of Houlihan's treatment and recovery in a far more thorough fashion. This medical evidence, therefore, constitutes precisely the type of countervailing proof which is sufficient to allow an ALJ to reject a treating doctor's opinion. See Whitten v. Commissioner, 171 F.App'x 380, 381 (3d Cir. 2006)(denying disability claim in case involving hepatitis where other countervailing medical evidence contradicted treating physician's opinion.

Since the ALJ's decision adequately addressed this conflicting and equivocal medical evidence, the medical evidence cited by Houlihan did not suggest that the ALJ's ultimate conclusion was unsupported by substantial evidence, and there is no legal requirement that the ALJ discuss "every tidbit of evidence included in the record." Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004), this argument by Houlihan does not provide grounds for setting aside the ALJ's judgment when we scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

### D.    The Record Before the ALJ Was Adequate to Allow for Informed Decision Making

In this appeal, Houlihan also argues that the ALJ erred in deciding this matter because the record was insufficiently developed to permit a fully informed decision, and particularly faults the ALJ for failing to appoint a medical advisor to assist in this regard. (Doc. 15, pp.9-10.)  This argument merits only brief consideration. While the ALJ has a duty to ensure that the record is both fair and adequate, the nature of that duty is limited, and the principal responsibility for proving a claimant's case lies with the claimant and her counsel.  Indeed, it has been aptly observed that, in this regard, "[t]he burden lies with the claimant to develop the record regarding his or her disability because the claimant is in a better position to provide information about his or her own medical condition." Money v. Barnhart, 91 F. App'x. 210, 215 (3d Cir. 2004). In contrast, the ALJ's responsibility here is much more limited. The ALJ's "only duty in this respect is to ensure that the claimant's complete medical history is developed on the record before finding that the claimant is not disabled." Id.

In any event, the applicable regulations allow, but do not require, an ALJ to seek the opinions of a medical expert. See 20 C.F.R. § 416.927(f)(2)(iii). Accordingly, a decision regarding whether to order a consultative examination or a medical advisor rests in the sound discretion of the ALJ. See Bonanno v. Comm'r of Soc. Sec., No. 08-

1709, 2009 WL 82694, at *2 (3d Cir. Jan. 14, 2009). As the United States Court of Appeals for the Third Circuit has aptly noted:

> The relevant regulation provides that the ALJ "may," but is not required to, consult medical experts. 20 C.F.R. 416.927(f)(2)(iii). Social Security Administration policy directs the ALJ to obtain an updated medical opinion "when additional medical evidence is received *that in the opinion of the [ALJ]* ... may change the State agency medical ... consultant's findings." Soc. Sec. R. 96-6p (1996) (emphasis added).

Id.

Construed in this way, the ALJ fully discharged her duty and properly exercised her discretion in this case by collecting, reviewing and assessing the various medical opinions, diagnostic tests, and clinical impression, and evaluating those medical results in light of the Plaintiff's description of her medical impairments and limitations. Since the record in this matter shows that the claimant's complete medical history was adequately developed on the record, but that record simply did not sustain a permanent disability finding, the Plaintiff's complaints regarding the state of the factual record do not compel a remand of this matter.

## E.    Houlihan's Recusal Request Is Untimely

Finally, Houlihan raises, in a summary fashion, a claim that the ALJ should have recused herself from this case. This contention is advanced, without benefit of any citation to legal authority, in the following cursory manner: "It was apparent at the time of hearing, that Judge Hardiman was predisposed to this case as she met with

29

counsel for the claimant prior to the hearing, without any testimony being taken, to propose the closed period of disability from the onset date to August 2007." (Doc. 15, p. 9.)

This cursory claim warrants only brief examination. This claim fails for two reasons.

First, as a procedural matter, there is no evidence that Houlihan sought recusal of the ALJ at the time of the hearing, (Tr. 37-65), the course mandated by the rules governing these proceedings. See 20 C.F.R. § 416.1440 (requiring a claimant to notify the ALJ as soon as possible of her objection to the ALJ hearing the matter and, if the ALJ refuses to recuse herself, to renew her objection to the Appeals Council). Indeed, at the hearing Houlihan's counsel raised no objections to the ALJ's actions, and in fact agreed with the ALJ, stating, "Okay. Okay." at the close of the ALJ's colloquy with Houlihan. (Tr. 44.) Furthermore, Houlihan did not raise this issue before the Appeals Council, as the applicable regulations require. (Tr. 4-5.) These procedural failures by Houlihan prevent us from now addressing this recusal claim, since on matters of recusal we can play no independent fact-finding role but rather must simply assess the Commissioner's factual determinations. Therefore, we may not independently assess a recusal claim that was not properly presented to the ALJ or Appeals Council. See

Caldwell v. Barnhart, 85 F. App'x 811812-3 (3d Cir. 2003)(refusing to consider recusal claim that was not presented to the ALJ or Appeals Council.)

In any event, as a substantive matter, generally an ALJ is presumed to be unbiased unless there is a showing of a conflict of interest or some other specific reason for disqualification. Schweiker v. McClure, 456 U.S. 188, 195 (1982). The burden of establishing a disqualifying interest rests with the party asserting bias, id. at 196, and a party asserting bias must show that the behavior of the ALJ was "so extreme as to display clear inability to render a fair judgment," Liteky v. United States, 510 U.S. 540, 551 (1994). Houlihan's recusal claims do not meet this exacting standard of proof and are, therefore, both procedurally inappropriate and substantively lacking in merit.

## III.   RECOMMENDATION

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the Plaintiff's complaint be dismissed for the failure to state a claim upon which relief can be granted, and the Commissioner's decision, which was partially favorable to the Plaintiff, be upheld.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days

after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 1st day of December, 2010.

***S/Martin C. Carlson***
Martin C. Carlson
United States Magistrate Judge
